### Vermont State Employees Association, Inc. v. State of Vermont, et al.

[357 A.2d 125]

No. 296-75

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed February 4, 1976

Motion for Reargument Denied March 18, 1976

*Brock & Sidel,* Montpelier, for Plaintiff.

*M. Jerome Diamond,* Attorney General, and *Louis P. Peck,* Assistant Attorney General, Montpelier, for State.

**Barney, C.J.** Non-management employee members of the plaintiff Vermont State Employees Association, Inc., (V.S.E.A.) brought an unfair labor practice complaint against the State of Vermont, against the Department of Personnel and Department of Highways in particular. The complaint alleged a refusal to bargain collectively on the part of the State as employer on an issue relating to a guaranteed overtime minimum compensation as provided in the previous employment contract, now expired.

The Board held a hearing and issued an order (1) requiring the parties to undertake good faith bargaining on the

issue; and (2) ordering the overtime pay restored pending a new agreement or the reaching of a bona fide impasse in the negotiations. The State moved to set aside that order and for dismissal of the complaint. After hearing, the State's motion was dismissed. A notice of appeal was then filed in this Court.

The history of bargaining on the overtime rates forms part of the background of this dispute. Sometime in September, 1974, the director of labor relations called the executive director of the V.S.E.A. to the bargaining table and submitted a proposed change in overtime practices, gradually phasing the workweek down to forty hours by June 22, 1975. In December, the labor relations director suggested a meeting to further discuss the matter. A week later the V.S.E.A. executive director was notified of a proposed office memorandum adjusting overtime payments to the category of employees with which this suit is concerned. V.S.E.A. objected and filed a grievance with the Labor Relations Board. The Board ordered the contractual provisions continued.

In January, 1975, the executive director of V.S.E.A. proposed that negotiations in the management and non-management contracts be reopened at the end of the 1975 legislative session. Negotiations did so commence. On June 12, during the course of management unit negotiations which had not been completed, the issue of extending the non-management contract and maintaining the status quo on overtime for these "Category IV highway department employees" was raised. At that time the management and non-management contracts were extended except that the director of labor relations advised that the State would not agree to extend the guaranteed 43½-hour week beyond July 5, 1975.

The Labor Relations Board found that V.S.E.A. did not believe that the director of labor relations would negotiate the overtime issue, but that the director claimed he would be available to negotiate these matters during the extended term of the contracts.

Neither side initiated a meeting to negotiate the issue. In fact, the parties did not have adequate time to negotiate the management unit contract before expiration of the extended terms of the contract. Although neither party acted in bad faith, the collective bargaining process broke down. The

V.S.E.A., before the expiration of the extended contract, filed the unfair labor practice complaint with which we are concerned.

Litigation involving the procedural aspects of Chapter 27 of Title 3, the State Employee Labor Relations Act, has not been before us previously. The statutory requirements as to appeals from the Board are set forth within the Act itself and are unique to it. 3 V.S.A. § 1005 provides that the requirements of the Administrative Procedure Act, Chapter 25, Title 3, are not applicable to this Board, unless specifically referenced in the statute.

3 V.S.A. § 1002 was apparently twice revised in separate acts without reference to each other in the 1971 Adjourned Session of the General Assembly. For the purposes of this litigation it may be said that they both provide that the enforcement of any orders made by the Labor Relations Board shall be by petition for appropriate equitable relief before the Washington County (now Superior) Court. That court is restricted to determining whether or not the records of the Board and the law relating thereto support the order. From the action of that court an appeal, on questions of law, would lie to this Court.

3 V.S.A. § 1003 provides that: "Any person aggrieved by an order or decision of the board issued under the authority of this chapter may appeal on questions of law to the supreme court."

Taking these sections together, the statutes make a pattern which requires the Board to go before the Washington Superior Court for review and an order if it grants affirmative relief. If relief is denied by the Board, or no affirmative action is required, the aggrieved party may bring the legal issues involved directly to this Court. In other words, where the decision rendered by the Board requires it to petition for enforcement, the road to relief lies through the Washington Superior Court; where the order of the Board requires no enforcement action by it, as in the case of a denial of relief, the appeal is here and is limited to issues of law.

In connection with this case, another divided road must be examined. 3 V.S.A. § 982 provides in subsection (d), speaking of a collective bargaining agreement:

Such an agreement shall terminate at the expiration of its specified term. Negotiations for a new agreement to take effect upon the expiration of the proceeding agreement shall be commenced at any time within one year next preceding the expiration date upon the request of either party and may be commenced at any time previous thereto with the consent of both parties.

Subsection (e) goes on to provide:

In the event the employer and the collective bargaining unit are unable to arrive at an agreement and there is not an existing agreement in effect, the personnel board with the approval of the governor may make such temporary rules and regulations as may be necessary to insure the uninterrupted and efficient conduct of state business. Such rules and regulations shall terminate and be of no further force and effect, except for any rights arising thereunder, as soon as an agreement is reached.

Lastly, subsection (f) describes the powers of the Board:

The board is authorized to enforce compliance with all provisions of a collective bargaining agreement upon complaint of either party. In the event a complaint is made by either party to an agreement the board shall proceed in the manner prescribed in section 965 of this title relating to the prevention of unfair labor practices.

A further explanatory word is necessary. Under the provisions of 3 V.S.A. § 301(1), and §§ 2202(a)(2) and 2203(a), it would appear that the secretary of administration has succeeded to the powers of the Personnel Board given by 3 V.S.A. § 982(e).

In any event, the statutory pattern is clear that collective bargaining agreements expire at the end of their specified terms. When they have so expired, the statutory authority to provide for interim employment arrangements lies in the secretary of administration, with the approval of the governor, not in the Labor Relations Board. 3 V.S.A. § 1002 also provides that such interim rules and orders shall be enforced by petition to the Washington Superior Court.

It follows from all this that the Board's order relating to employment terms for the interim period until a new agreement is reached was beyond its authority, as a matter of law. Such relief must be sought before the secretary of administration.

The issue urged vigorously for decision by both sides is whether or not the State, by limiting the period which it would continue the previous overtime payment arrangements beyond a date certain, July 5, 1975, constituted unilateral action by the State amounting to an unfair labor practice. The July 5 date was beyond the termination date of the existing collective bargaining agreement, which was June 17, 1975. At the time, bargaining was going on, and the State agreed to extend both the management and non-management contract terms to apply during the negotiations, except for the overtime payment arrangements central to this case.

The Board, in its original findings, seemed to find both parties remiss in their bargaining responsibilities, the State for not initiating negotiations on its proposed discontinuance of the overtime payments, and V.S.E.A. for filing its unfair labor practice charge "without having probed the conviction behind the State's announced position". The Board concluded, however, that since no negotiation impasse had been reached on the issue, the State could not lawfully unilaterally change its overtime payment practice upon expiration of the contract. In its second order in response to the State's motion seeking dismissal, it made its position clear by directly labeling the unilateral change an unfair labor practice.

In its conclusions of law, the Board finds the central issue to be the question of whether or not the State had the right to unilaterally reduce the workweek and wages of the employees upon termination of the agreement. It concluded that the answer to that question is "no". Under the law of the State of Vermont as embodied in the State Employee Labor Relations Act, Title 3, Chapter 27, V.S.A., the only enforceable arrangements relating to employment practices after termination of a collective bargaining agreement and before the agreement upon a new one are those established under the authority of 3 V.S.A. § 982(e) by the secretary of administration and the governor. Therefore, the Board's answer was in error.

Under the statute previously noted, 3 V.S.A. § 982, subsections (a) through (f), the Board lacks jurisdiction to make interim rules and regulations to govern after the termination of a collective bargaining agreement. Since the termination of collective bargaining terms is recognized in the statute, also, such termination is not an unfair labor practice. Therefore, the complaint must be dismissed as provided by 3 V.S.A. § 965(d). It is perhaps unnecessary to point out, on the other hand, that neither the State nor V.S.E.A. are relieved of their obligation to bargain in good faith to attempt to reach a new collective bargaining agreement, as mandated by 3 V.S.A. § 961(5) and 3 V.S.A. § 962(4). Under those sections and 3 V.S.A. § 965, collective bargaining is under the jurisdiction of the Board, whether or not a collective bargaining agreement already exists.

*Complaint dismissed.*

**Larrow, J.** (Dissenting). I can accept, albeit with some reluctance, the expressed conclusion that "the State had the right to unilaterally reduce the workweek and wages of the employees upon termination of the agreement". But I cannot subscribe to the proposition that because the termination of collective bargaining terms is "recognized" in the statute, such termination is not an unfair labor practice. Termination is indeed recognized, but termination in the manner here shown is not.

As the majority points out, the "only enforceable arrangements" after termination, and before a new agreement, are those established under 3 V.S.A. § 982(e) by the secretary of administration and the governor. That procedure was not here followed. Whatever the conclusion had this statute been complied with, and recognizing that under our statute the State has rights not accorded the typical employer under federal law, I would still hold that the unilateral change made here in workweek and wages *is* an unfair labor practice. In my view, the right of the State to make such a change, effective after contract termination, is not an absolute one. It is, rather, conditional upon following 3 V.S.A. § 982(e). Until the approval there specified is sought and obtained, the unilateral changes here involved should be considered an unfair labor practice. It is, in effect, a refusal to bargain collectively,

and it cannot be justified under the statute as a matter of right, because the statutory procedure was not followed.

Billings, J., concurs in the foregoing dissent.