Vermont Superior Court
Filed 11/29/25
Washington Unit



**VERMONT SUPERIOR COURT**

Washington Unit

65 State Street

Montpelier VT 05602

802-828-2091

www.vermontjudiciary.org

**CIVIL DIVISION**

Case No. 25-CV-04981

| Vermont State Employees' Association v. State of Vermont et al |
| :---: |

# ENTRY REGARDING MOTION

Title: Motion for Temporary Restraining Order and/or Preliminary Injunction with Memorandum of Law (Motion: 2)

Filer: Alfred Gordon O'Connell

Filed Date: November 12, 2025

The motion is DENIED.

Today this Court has been tasked with addressing a petition for extraordinary relief sought by the Vermont State Employees Union (VSEA) against the executive branch of the State of Vermont concerning a recently promulgated policy change requiring State employees to return to their in-person workstations no less than 3 days per work week beginning December 1, 2025 (the "Return-to-Work Policy").[1] The VSEA opposes this shift as it is currently formulated and has filed a petition with the Vermont Labor Relations Board under the Unfair Labor Provisions of 3

---

[1] VSEA Verified Complaint at Ex. B.

V.S.A. § 965.[2] In addition to that Petition, the VSEA has also filed the present complaint and motion for a preliminary injunction, which the Court has considered pursuant to Rule 65. V.R.C.P. 65. Based on the reasons stated below, the Court finds that it lacks express statutory authority to review the petition for a preliminary injunction. To the extent that the Court has equitable jurisdiction to review such a complaint, the VSEA has not presented sufficient evidence of irreparable harm at this time. For these reasons, Petitioner's motion for a Preliminary Injunction is **Denied**.

## Background Facts[3]

On September 12, 2025, the office of Governor Phil Scott formally notified the VSEA that it would be enacting a policy change effective December 1, 2025, which would require all state employees in the executive branch to return to in-person work at least three days per work week. Whether this change in policy represents a logical return to pre-covid working conditions, or a violation of 21 V.S.A. § 309's flexible working arrangements statute that requires bargaining, is disputed by the parties. On November 10, 2025, after negotiations with the executive branch, the VSEA filed a grievance with the Vermont Labor Relations Board (VLRB) who has

---

[2] Vermont state employees are expressly excluded from the Vermont State Labor Relations Act found at 21 V.S.A. §¶ 1501, et sec. See 21 V.S.A. § 1502(7) (excluding state employment). Instead, State employment is governed by the Vermont State Employees Labor Relations Act found at 3 V.S.A. §§ 901, et sec. See *Bd. Of Trustees of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd.*, 162 Vt. 571, 574 (1994) (distinguishing between private, state, and municipal labor employment contracts).

[3] This information comes from the verified complaint, the declaration and testimony of Deputy Secretary of the Agency of Administration Sean Brown, as well as the exhibits submitted by the parties.

primary jurisdiction of unfair labor practices under 3 V.S.A. § 965. Two days later, the VSEA filed the present complaint with this Court seeking preliminary injunctive relief. The VSEA has subsequently also sought a preliminary ruling from the VLRB and sought the Board to take preliminary action. The VLRB has elected not to participate in the present action or take preliminary action, but it has adopted an expedited hearing schedule that is set to begin in early December.

The parties estimate that approximate 8,500 Vermont State employees are affected by the Return-to-Work Policy. Out of those 8,500, approximately 5,500 are already in compliance with the Policy and will not experience any change. Out of the remaining 3,000 employees, 425 employees have filed requests with the State for an exemption to the policy, which the State has represented it will grant for compelling reasons on a case-by-case basis.[4] The State reports that 25 of these requests have been approved and granted. The remaining 400 requests remain under advisement. To date, none have been rejected. The State has further represented that the Return-to-Work Policy will not be enforced against anyone who has a pending request. In some cases—particularly situations where an employee may have to relocate to comply with the Policy—the State has envisioned granting employees up to a 7-month exemption from the Policy. While the State has required any request for an exemption to be put in writing, it has also indicated that it would

---

[4] These exemptions range from limited, temporary exceptions to more permanent accommodations and appear from the testimony to be dependent on the individual employee's situation and needs.

be flexible in its review process with a focus on the substantive over any technical requirements.

Deputy Secretary Brown credibly testified that the State's standards will necessarily be individualized based on the circumstances of the employee's situation and nature of his or her request.[5] The two main areas of hardships discussed by both parties involve individuals who presently live a substantial distance from their workstations and those individuals with child-care needs or similar obligations. From the anecdotal representations, there appears to be the potential for varying degrees of hardship. For example, the VSEA, in its argument, referenced an employee living in Brattleboro, who is a new mother and is obligated to report to a Waterbury workstation. The hardship in such a case would not simply be the distance between the employee's workplace and home but also the on-going child-care and breast-feeding needs of the employee's child.[6]

The VSEA does not contend that the State's exemption process is unduly onerous. The VSEA did elicit some testimony indicating that the exemption FAQs on the State's website was less than exhaustive or robust in its clarity, but the VSEA

---

[5] Nothing in Deputy Secretary Brown's testimony or the available evidence indicates that the State would be implementing either the Return-to-Work Policy in derogation of the State's obligations under the Americans with Disabilities Act or State Fair Employment Standards, and in the absence of evidence to the contrary, the Court understands that the provisions shall continue and accommodations offered under this statutes would be applied and given consistent with the statutory standards, regardless of any Return-to-Work Policy. See 42 U.S.C. §§ 12101–12213; 21 V.S.A. §§ 495–496a.

[6] In his testimony, Deputy Secretary Brown stated that such an individual would almost certainly be eligible for an exemption if one was requested.

did not point to any unduly restrictive terms and cited no harsh interpretations. The heart of the VSEA's objections lie not necessarily with the execution of the exemption process, but rather in the very existence of such a process that requires employees to affirmatively apply for exemptions and provide compelling reasons. This objection, however, is rooted in the merits of the VSEA's ultimate objection to the State's policy, which revolves around the question of whether the State has unilateral authority to re-instate the Return-to-Work Policy, or whether it constitutes a change that mandates bargaining or runs afoul of 21 V.S.A. § 309.

Apart from numerical and anecdotal examples, the VSEA was not able to produce either a specific number of employees that will suffer harm from this Policy or testimony or evidence that would elevate specific nature of such harm for each individual beyond the anecdotal and generalized.

## Standard of Review: Preliminary Injunction[7]

As a Motion for Preliminary Injunction, Plaintiff seeks an "extraordinary remedy," which is "never awarded as of right." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 24 (2008)). There are four factors to determining whether a Plaintiff is entitled to a preliminary injunction, and Plaintiff bears the burden of establishing all four of the relevant factors under Vermont law: "(1) the threat of irreparable harm to the movant; (2) the potential

---

[7] While the VSEA's motion

harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." *Taylor*, 2017 VT 92, at ¶ 19 (citing *In re J.G.*, 160 Vt. 250, 255 n.2 (1993)); see also V.R.C.P. 65.

## Does the Plaintiff Have a Statutory Right to Seek a Preliminary Injunction?

The first legal question raised by Plaintiff VSEA's motion is whether it has a statutory right to seek a preliminary injunction. VSEA cites to 3 V.S.A. § 1002(b) in its motion as giving it authority to seek a preliminary injunction.

The "overall aim" of statutory interpretation "is to give effect to the intent of the legislature . . ." *State v. International Collection Service, Inc.*, 156 Vt. 540, 542 (1991). This begins by looking at the plain language of the statute. Id. In reviewing a statute, the Court must look at the statute as a whole and will construe the language of a statute "with others *in pari materia* as parts of one system." *Bud Crossman Plumbing & Heating v. Comm'r of Taxes*, 142 Vt. 179, 185 (1982) (emphasis in the original).

Looking to the plain language of Section 1002, the intent of the statute is limited to the enforcement of orders issued by the Vermont Labor Relations Board. In subsection (a), the statute states that "Orders of the Board or an arbitrator issued under this chapter may be enforced by any party or by the Board by filing a petition with the Superior Court in Washington County . . ." 3 V.S.A. § 1002(a). The key

word that begin the subsection is "Orders" issued by the Vermont Labor Relations Board. Only after the Board has issued an Order can a party, or the Board itself, file a "petition" with the Superior Court. Under this plain language, the statute calls for the Board to act first, and to issue an Order before the parties may come to the Superior Court and file a petition.

This language is picked up in subsection (b), the provision cited by the VSEA. It states that "Upon filing of a petition by a party or the Board, the Court may grant such temporary relief, including a restraining order, as it deems proper pending a formal hearing." 3 V.S.A. § 1002(b). Again, the key predicate is the filing of petition, which in turn requires an Order from the Board.

As the Vermont Supreme Court has noted, Section 1002:

[P]rovide[s] that the enforcement of any orders made by the Labor Relations Board shall be by petition for appropriate equitable relief before the Washington County (now Superior) Court. That court is restricted to determining whether or not the records of the Board and the law relating thereto support the order. From the action of that court an appeal, on questions of law, would lie to this Court.

*Vermont State Employees' Ass'n, Inc. v. State*, 134 Vt. 195, 197 (1976); see also *Stat v. Davidson*, Dckt. No. 483-8-13 Wncv, 2015WL5176755, at *2 (Apr. 15, 2015) (Teachout, J.) (characterizing Section 1002 as a provision for the "enforcement of VLRB orders").

This limitation is consistent with the language in 3 V.S.A. § 965, which addresses unfair labor practices on which the VSEA's entire action rests. Under Section 965, the Vermont Labor Relations Board is given exclusive, initial jurisdiction over the review and determination of unfair labor practices.[8] All due process and hearing rights are laid out in this section and give both employer and employee rights to be heard by the Board in a quasi-judicial capacity. Id. (laying out the pleading, hearing, and evidentiary procedures as well as the standards for rendering a decision). The Vermont Supreme Court has ruled that this section gives the Board authority "to issue cease and desist orders" and "and to take such affirmative action as will carry out the labor relations policies of the state. To effectuate its statutory purpose, the Board must stand by its own powers to remedy unlawful practices." *VSEA (Health Care) v. State*, 161 Vt. 600, 601 (1993) (mem.). Nowhere in Section 965 or the accompanying provisions is there a role for the Superior Court to act prior to the VRLB taking action.

This conclusion that neither Section 1002, nor any other provision of the SERLA, gives an individual party statutory authority to seek a preliminary injunction when an Unfair Labor Practice complaint is filed, does raise a question of whether the VLRB itself could either make a preliminary ruling or seek a preliminary injunction to preserve its authority to review, make determinations, and render

_____

[8] Both the VSEA and the State agree that the VLRB has primary jurisdiction to hear a complaint concerning an alleged unfair labor practice. See VSEA Reply at 4.

orders. While that issue is not directly before the Court, it is necessary to consider in light of both the State's arguments as well as the Court's consideration of its equitable power. The Court does find some authority for the proposition within the statutory framework and caselaw structure for the VLRB's authority to seek such relief. The Vermont Supreme Court has long interpreted not only the SELRA to be read *in pari materia* with its own provisions, but that the SELRA should be read as one part of a larger system of labor relations that govern both the private sector and municipalities. *Bd. Of Trustees of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd.,* 162 Vt. 571, 575–76 (1994) (applying provisions found in different sections of the SELRA, the SLRA, and the MERA to create a uniform right to appeal).

Thus, while the express provisions of 21 V.S.A. § 1623(g) have not been incorporated into the SELRA, the Court finds no reasonable basis to understand why this specific authority, which would allow the Board to seek temporary restraining orders needed to avoid hardships or preserve the status quo, would not be available to the Board. *Bd. of Trustees of Kellogg-Hubbard Library, Inc.,* 162 Vt. at 576–77 (reading the right of a direct appeal to the Vermont Supreme Court found in SELRA into the ULP process under the SLRA). There is nothing either in SELRA or the circumstances of a SELRA-based unfair labor practice grievance to conclude that the Board's authority to preserve the status quo to preserve its process would be

lesser than what it would have in a similar circumstance brought against a private employer.

The State in its brief outlines both the historical and policy reasons behind the allocation of power to the VLRB to seek preliminary injunctions. The Courts finds those passages compelling, but for the purpose of the present motion, the Court also finds that giving the VLRB the exclusive power to bring a preliminary injunction would cure the issue of meeting the likelihood of success prong in the preliminary injunction standard. As noted at the November 26th hearing, the heart of the VSEA's contention revolves around the fairness or lack of fairness within the State's Policy and its December 1st deadline. The Court has concerns because it is not the ultimate decision-maker and any determination on this issue is likely to impact the final decision-making process before the VLRB. These are issues that the VLRB must address, and their absence from the present action means that any adjudication, even on a temporary basis, invades their purview and forces the Court to analyze and opine, even on a limited basis, on the decision that the General Assembly has given the VLRB exclusive authority to make. If the VLRB were to bring such a motion, then it would represent a preliminary statement from the ultimate decision-maker in this case, which would represent a substantial assurance to this Court that the likelihood of success prong had been satisfied to a substantial degree.

Even if the Court were to fully adopt the reasoning from *Bd. of Trustees of Kellogg-Hubbard Library, Inc* decision, however, it would not alter the present situation. As noted at the November 26, 2025 hearing, the VLRB has elected neither to take independent action to preserve the status quo, nor to join the present litigation as an interested party. In this respect, the one party that could arguably claim the ability to seek preliminary injunctive relief in this matter as a statutory right, has elected not to take such action. The Court finds this fact to have some significance as both an expression by the decision-making board and by its absence as a party with a substantial interest in the outcome.

Based on the foregoing, the Court finds that any exploration of injunctive relief in this matter is outside any statutory authority and framework, and it is necessarily limited to the Court's equitable injunctive powers.

**What Equitable Power the Court have to Insert Its Authority into a Pending Administrative Proceeding**

As a preliminary matter, the question of equitable powers rests, in part, on whether there is a full and adequate remedy at law available. *Poulin v. Town of Danville*, 128 Vt. 161, 165–66 (1969). "Equity will afford relief unless there is a plain, adequate and complete remedy at law." Id. In this case, the prior analysis demonstrates that the legislature has created a specific framework for the review and adjudication of unfair labor practices under 3 V.S.A. § 965 and for its

enforcement under 3 V.S.A. § 1002.  The Court finds that these provisions are adequate and complete as a remedy at law.  When coupled with the implied *in pari materia* power of the VLRB to either take preliminary action or action with this Court, there is very little daylight between the VLRB process and a complete remedy in regard to the normal progression of an unfair labor practice grievance.

The present situation suggests that there is a small and limited area where the Court's equity jurisdiction may be necessary.  In this respect, both parties have cited to federal case law for the idea that there remains a very narrow equitable channel through which some injunctive relief may arise.  This is known as the *Boys Market/Buffalo Forge* exception and the reverse of this exemption.  *Niagara Hooker Employees Union v. Occidental Chemical Corp.*, 935 F.2d 1370, 1374–75 (2d Cir. 1991).  The *Boys Market/Buffalo Forge* exemption allows that courts may grant injunctions to enjoin certain union activity during arbitration to preserve the status quo.  Id. at 1375–76.  The reverse of this exemption applies to certain employer activity.  Id.  This exemption is first and foremost, premised on the court's equitable power to prevent certain administrative proceedings from being overtaken and rendered meaningless by the unilateral actions of a party.  Id. at 1377.[9]

---

[9]  The State has sought to limit the application of *Niagra* and similar cases in this matter on the fact that it involved arbitration and not unfair labor practices.  The Court finds that the reasoning of *Niagara* and similar cases is not so constrained as the heart of this analysis is anchored in a broader equitable power of the court to preserve the process permitted by statute and to prevent a party from frustrating or doing what would effectively be an end-run to frustrate the statutory framework and remedies.  Id. at 1379

As described by the Second Circuit, the invocation of this injunctive power has two essential elements that the moving party must establish: (1) the action sought to be enjoined must have the effect of frustrating the arbitration process, and (2) the effect of the action must render the arbitration process a "hollow formality." Id. at 1377–78. The second element can only be met if an award in the moving party's favor could not undo the harm occasioned by the lack of an injunction. Id. at 1378.

Applying these principals to the present action, the VSEA contends that if a preliminary injunction is not granted, then a certain number of its members will face hardship or the loss of employment before the VLRB can review and adjudicate the grievance. Nothing in these allegations would necessarily render the VLRB's process necessarily futile. This is, in part, because of the uncertainty of the facts in this case. As based on Deputy Secretary Brown's declaration and testimony, the State has a vigorous exemption process. As of today, it is unclear how many State employees face any type of hardship from the Return-to-Work Policy. That number will almost certainly decrease as the exemption process continues. Even if temporary, the exemptions will allow the employee to avoid the brunt of any policy changes during the time that the VLRB will be working on its expedited process. If such exemptions forced an employee to incur some expense, there is no evidence

---

(focusing on whether an action frustrates the process or renders it futile and not a "wider focus" on the nature of the harm).

that a successful decision for the VSEA and subsequent bargaining could not address this issue.

The number and nature of the affected population is, in short, a moving target. The VSEA originally stated that its informal surveys had indicated that as many as 300 members would be affected. The State has already received 425 exemption requests. It is not clear if these numbers contain the full universe of employees facing hardship under the Policy, or if only represents some fractional percentage comprised of those who have spoken up.

This number becomes even more complicated for injunctive purposes when it is broken down into specific cases. Under the State's policy, individuals facing a geographic hardship that would require relocation may receive up to 7 months of deferment. While that does not go to the ultimate question of whether these employees should be required to move to keep their employment, it effectively nullifies the emergency nature of the present action as the action should not come until after VLRB makes its expedited decision. For those that have other issues, such as child-care, it is not clear from the record whether these hardships would be remedied by an exemption or remediated by an order in the VSEA's favor from the VLRB.

What this Court is left with is an uncertain portion of state workers who may be substantially affected by the Return-to-Work Policy and who may or may not face adverse employment consequences between now and the time that the VLRB is able to decide the central issue. This limited impact does not meet the standard of *Niagara* or the *Boys Market/Buffalo Forge* standard of rendering the VLRB process futile.

More broadly, the record does not show the necessary irreparable harm that this Court must find to grant a preliminary injunction. *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 40 ("A preliminary injunction will usually be denied 'if it appears that the applicant has an adequate alternate remedy in the form of money damages or other relief.'") (quoting C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURe § 2948.1 (3d ed. 2017)). On the present record, the Court would be speculating as to the scope, nature, and even severity of the harm if it went forward to grant relief in this case. This is not to say that there are not State employees who will be affected by this policy. Nor is it to minimize the hardships or concerns of those individuals, but it is to recognize that there are several processes in play, presently, that render a decision at this time from this Court inappropriate.

First, the executive branch has implemented an individualized exception policy that appears poised to address a significant number of affected individuals and the most serious hardships. If and when such relief is granted, then any

emergency issues are concurrently abated. Second, the VLRB has committed to taking expedited action. Any ruling from this Court should take pains not to interfere or affect that agency's authority to control the matter and craft an appropriate order and remedy. The VLRB's its initial steps indicate that it has taken jurisdiction and initial steps to address the VSEA's concerns. Third, it appears that the State has committed to allowing employees the opportunity to work through the exemption process and committed to taking no action prior to the review and determination of these exemptions. This will further separate out the pool of potentially impacted employees into those who have elected to utilize the exemption process and those who have not. Only after these initial steps would the parties have a clear record on which to make their arguments. Until then, the Court cannot find any irreparable harm given the State's offering of an exemption and the lack of clarity about the number of affected employees and the true nature of the harm against which they seek relief.

For these reasons, the Court finds that any application of its limited equitable jurisdiction at this point in time would be an abuse of discretion as the Court lacks the necessary foundation and record for rendering the extraordinary injunctive relief sought by the VSEA within the limited scope of relief before the Court.

## ORDER

Based on the forgoing, the VSEA's motion for injunctive relief is **Denied.** Given that the VSEA only sought a preliminary injunction in this matter and not ultimate or final relief on the underlying grievance, the Court further **Dismisses** the complaint given that the sole issue has been resolved with the present denial.

Electronically signed on 11/29/2025 1:58 PM pursuant to V.R.E.F. 9(d)

_____

Daniel P. Richardson
Superior Court Judge